DAVIS, Judge.
 

 *492
 
 Johnnie Wilkes ("Plaintiff") appeals from the Opinion and Award of the North Carolina Industrial Commission ("the Commission") determining that he (1) failed to demonstrate that his anxiety and depression were causally related to his work-related accident; and (2) was no longer entitled to temporary total disability benefits. After careful review, we reverse in part, vacate in part, and remand for further proceedings.
 

 Factual Background
 

 Plaintiff is a 62-year-old man who, at the time of his accident, had been employed by the City of Greenville ("Defendant") for approximately nine years. On 21 April 2010, Plaintiff was driving one of Defendant's trucks when a third party ran a red light and collided into the truck. The force of the accident caused the truck to collide with a tree, breaking the windshield and deploying the airbags. Plaintiff was transported to Pitt County Memorial Hospital, where he was treated for an abrasion on his head, broken ribs, and various injuries to his neck, back, pelvis, and left hip. At the hospital, Plaintiff underwent a brain MRI, which appeared "negative for acute infarction but ... showed mild paranasal sinus disease resulting from a concussion." Plaintiff was discharged from the hospital the next day.
 

 On 22 April 2010, Defendant filed a Form 19, reporting to the Commission that Plaintiff had in the course of performing his duties as a landscaper for the Recreation and Parks Department sustained injuries in a multi-vehicle accident. One week later, on 29 April 2010, Defendant filed a Form 60, admitting Plaintiff's entitlement to compensation for his injury by accident.
 

 In January 2011, both parties filed a Form 33 requesting that the claim be assigned for hearing. Defendant's Form 33 stated that the "[p]arties disagree about the totality of plaintiff's complaints related to his compensable injury and need for additional medical evaluations." Plaintiff's Form 33 alleged that Plaintiff "is in need of additional medical treatment ... specifically an evaluation by a neurosurgeon." On 4 February 2011, Deputy Commissioner Theresa B. Stephenson entered an order requiring Defendant to "send Plaintiff for a one time evaluation
 
 *493
 
 to a neurosurgeon of their choosing. If that neurosurgeon recommends additional neurological or neuropsychological treatment, Defendant shall provide this and direct treatment."
 

 On 21 September 2011, a hearing was held before Deputy Commissioner Mary C. Vilas on Defendant's Form 33 Request for Hearing. The record was closed on 18 July 2012 and then reopened by order on 10 January
 
 *285
 
 2013 to allow the parties to submit three additional stipulated exhibits. Deputy Commissioner Vilas entered an opinion and award on 1 February 2013 determining that Plaintiff's low back and knee pain, anxiety, depression, sleep disorder, tinnitus (ringing in one's ears), headaches, and temporomandibular joint pain were causally related to his 21 April 2010 compensable injury and ordering Defendant to pay all of Plaintiff's medical expenses incurred or to be incurred with regard to treatment of these conditions. Deputy Commissioner Vilas also concluded that Plaintiff demonstrated "that he is capable of some work but that it would be futile to seek work at this time because of preexisting conditions of his age, full-scale IQ of 65, education level and reading capacity at grade level 2.6, previous work history of manual labor jobs, and his physical conditions resulting from his April 21, 2010 compensable injury" such that he was entitled to temporary total disability compensation.
 

 Defendants appealed to the Full Commission, and the Commission heard the matter on 4 November 2013. On 9 April 2014, the Commission entered its Opinion and Award reversing Deputy Commissioner Vilas' decision. Specifically, the Commission concluded that (1) Plaintiff failed to meet his burden of demonstrating that his anxiety and depression were caused by his work-related accident; and (2) Plaintiff was no longer entitled to total temporary disability benefits because he "presented insufficient evidence that a job search would be futile." The Commission found that Plaintiff's tinnitus, however, was causally related to his 21 April 2010 accident and therefore ordered Defendant to pay all of Plaintiff's past and future medical expenses "that are reasonably required to effect a cure, provide relief or lessen any disability" related to his tinnitus. Plaintiff filed a timely appeal to this Court.
 

 Analysis
 

 Appellate review of an opinion and award of the Industrial Commission is "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law."
 
 Philbeck v. Univ. of Mich.,
 
 ---N.C.App. ----, ----,
 
 761 S.E.2d 668
 
 , 671 (2014) (citation and quotation marks omitted). "The findings of fact made by the Commission are
 
 *494
 
 conclusive on appeal if supported by competent evidence even if there is also evidence that would support a contrary finding. The Commission's conclusions of law, however, are reviewed
 
 de novo.
 
 "
 
 Morgan v. Morgan Motor Co. of Albemarle,
 
 --- N.C.App. ----, ----,
 
 752 S.E.2d 677
 
 , 680 (2013) (internal citation omitted),
 
 aff'd per curiam,
 

 368 N.C. 69
 
 ,
 
 772 S.E.2d 238
 
 (2015).
 

 Here, Plaintiff makes two primary arguments on appeal. First, he contends that the Commission misapplied the law when considering whether he was entitled to medical compensation for his anxiety and depression. Second, he argues that the Commission erred in concluding that he was not entitled to disability benefits because he "has not presented evidence of a reasonable job search and has presented insufficient evidence that a job search would be futile." We address each of these arguments in turn.
 

 I. Request for Additional Medical Compensation
 

 Plaintiff first argues that the Commission erred by failing to apply the presumption arising from our decision in
 
 Parsons v. Pantry, Inc.,
 

 126 N.C.App. 540
 
 ,
 
 485 S.E.2d 867
 
 (1997), to his request for additional medical treatment and compensation for his complaints of anxiety and depression. We agree.
 

 Pursuant to N.C. Gen.Stat. § 97-25, an employer must provide medical compensation for the treatment of compensable injuries, which includes "additional medical treatment ... directly related to the compensable injury" that is designed to effect a cure, provide relief, or lessen the period of disability.
 
 Perez v. Am. Airlines/AMR Corp.,
 

 174 N.C.App. 128
 
 , 135,
 
 620 S.E.2d 288
 
 , 292 (2005),
 
 disc. review improvidently allowed,
 

 360 N.C. 587
 
 ,
 
 634 S.E.2d 887
 
 (2006) ; N.C. Gen.Stat. § 97-25 (2013) (explaining that "[m]edical compensation shall be provided by the employer" for treatment of compensable injuries and employer's responsibility for such compensation includes any changes in treatment so long as "the change is reasonably
 
 *286
 
 necessary to effect a cure, provide relief, or lessen the period of disability").
 

 It is well established that an employee seeking compensation for an injury bears the burden of demonstrating that the injury suffered is causally related to the work-related accident.
 
 Hedges v. Wake Cty. Pub. Sch. Sys.,
 

 206 N.C.App. 732
 
 , 734,
 
 699 S.E.2d 124
 
 , 126 (2010),
 
 disc. review denied,
 

 365 N.C. 77
 
 ,
 
 705 S.E.2d 746
 
 (2011). Once the employee meets this initial burden, however, a presumption arises-often referred to as the
 
 Parsons
 
 presumption-that "additional medical treatment is directly related to the compensable injury."
 

 *495
 

 Perez,
 

 174 N.C.App. at 135
 
 ,
 
 620 S.E.2d at
 
 292 ;
 
 see also
 

 Pomeroy v. Tanner Masonry,
 

 151 N.C.App. 171
 
 , 182,
 
 565 S.E.2d 209
 
 , 216-17 (2002) ("When additional medical treatment is required, there is a rebuttable presumption that it is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury.").
 

 In
 
 Parsons,
 
 the plaintiff worked as an assistant manager at one of the defendant's stores and was injured when two men entered the store and assaulted her, striking her in the forehead and shooting her four times with a stun gun.
 
 Parsons,
 

 126 N.C.App. at 540
 
 ,
 
 485 S.E.2d at 868
 
 . The plaintiff sought workers' compensation benefits, and the Industrial Commission entered an opinion and award determining that she had suffered compensable injuries as a result of this workrelated incident and ordering the defendant to pay her medical expenses for these injuries, which consisted primarily of frequent headaches.
 
 Id.
 
 at 540-41,
 
 485 S.E.2d at 868
 
 . Neither party appealed from this opinion and award. Eight months later, the plaintiff sought medical compensation for the treatment of her headaches.
 
 Id.
 
 at 541,
 
 485 S.E.2d at 868
 
 . The Commission denied the plaintiff's request for medical compensation, ruling that the plaintiff " 'ha[d] not introduced any evidence of causation between her injury and her headache complaints at the time of the hearing' and ... 'failed to meet her burden of proof for showing the necessity of continued or additional medical treatment.' "
 
 Id.
 
 at 541,
 
 485 S.E.2d at 869
 
 .
 

 The plaintiff appealed to this Court, arguing that the Commission had erred in placing the burden on her to prove that her current headaches were caused by the employment-related assault.
 
 Id.
 
 at 541,
 
 485 S.E.2d at 868
 
 . We agreed, explaining that
 

 [a]t the initial hearing, plaintiff's main injury complaint was headaches. At that time, it was her burden to prove the causal relationship between her 30 April 1991 accident and her headaches. Plaintiff met this burden, as evidenced by the Commission's initial opinion and award, from which there was no appeal, granting her medical expenses and future medical treatment. In effect, requiring that plaintiff once again prove a causal relationship between the accident and her headaches in order to get further medical treatment ignores this prior award. Plaintiff met her causation burden; the Industrial Commission ruled that her headaches were causally related to the compensable accident. Logically, defendants now have the responsibility to prove the original finding of compensable injury
 
 *496
 
 is unrelated to her present discomfort. To require plaintiff to re-prove causation each time she seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident is unjust and violates our duty to interpret the Act in favor of injured employees.
 

 Id.
 
 at 542,
 
 485 S.E.2d at 869
 
 (internal citation omitted).
 

 This Court has applied the
 
 Parsons
 
 presumption to additional medical treatment not only when the initial determination of compensability is made by the Commission in an opinion and award,
 
 see
 
 id.,
 

 but also when the employer makes an admission of compensability by filing a Form 60,
 
 see
 

 Perez,
 

 174 N.C.App. at 136
 
 ,
 
 620 S.E.2d at 293
 
 ("As the payment of compensation pursuant to a Form 60 amounts to a determination of compensability, we conclude that the
 
 Parsons
 
 presumption applies in this context.").
 

 Plaintiff asserts that because Defendant filed a Form 60, which admitted that he had suffered a compensable injury by accident, he was entitled to the presumption that the additional medical treatment he sought for
 
 *287
 
 his symptoms of anxiety and depression was directly related to his compensable injury. Defendant contends that Plaintiff is not entitled to the
 
 Parsons
 
 presumption because it admitted compensability only as to the injuries Plaintiff suffered to his "ribs, neck, legs and entire left side" and not to Plaintiff's complaints relating to anxiety and depression. However, our caselaw since
 
 Perez
 
 has made clear that the
 
 Parsons
 
 presumption applies even where the injury or symptoms for which additional medical treatment is being sought is not the precise injury originally deemed compensable.
 
 See
 

 Carr v. Dep't of Health & Human Servs. (Caswell Ctr.),
 

 218 N.C.App. 151
 
 , 156,
 
 720 S.E.2d 869
 
 , 874 (2012) (rejecting defendant's argument that "the
 
 Parsons
 
 presumption does not apply when plaintiff's injury is a wholly different injury from the one accepted on the Form 60" where plaintiff sought additional medical treatment for a neck injury after defendant had admitted the compensability of her left hand injury).
 

 This Court addressed this same issue in
 
 Perez.
 
 The plaintiff in
 
 Perez
 
 was employed as a flight attendant and slipped and fell while carrying luggage down a stairway.
 
 Perez,
 

 174 N.C.App. at 129
 
 ,
 
 620 S.E.2d at 289
 
 . The plaintiff immediately felt pain in her leg, hip, and lower back, and the defendant-employer filed a Form 60 shortly after the incident admitting the compensability of her injury, which was described on the Form 60 as a "Sprain, Strain Lower Back."
 

 *497
 

 Id.
 
 at 129, 137 n. 1,
 
 620 S.E.2d at 289
 
 , 293 n. 1. The plaintiff returned to work as a flight attendant for several years before changing careers.
 
 Id.
 
 at 130,
 
 620 S.E.2d at 289
 
 .
 

 Approximately four years after the injury, the plaintiff's lower back pain "started to intensify again," and she sought medical treatment for her symptoms.
 

 Id.
 

 The plaintiff sought medical compensation for this treatment from the defendant, which the Commission awarded.
 

 Id.
 

 The defendant-employer appealed, arguing that the plaintiff was not entitled to additional medical compensation because she failed to produce evidence that her current symptoms were causally related to the compensable injury that had occurred four years earlier.
 
 Id.
 
 at 130-31,
 
 620 S.E.2d at 290
 
 . Specifically, the defendant-employer contended that the
 
 Parsons
 
 presumption did not apply to the plaintiff because the plaintiff's "herniated disc was a different injury from the injury stated on the Form 60 and, therefore, the admission of compensability does not cover this later and distinct injury."
 

 Id.
 

 at 136 n. 1,
 
 620 S.E.2d at
 
 293 n. 1. We rejected this argument, explaining that
 

 [t]he presumption of compensability applies to future symptoms allegedly related to the original compensable injury. We can conceive of a situation where an employee seeks medical compensation for symptoms completely unrelated to the compensable injury.
 
 But the burden of rebutting the presumption of compensability in this situation, although slight, would still be upon the employer.
 

 Id.
 

 at 137 n. 1,
 
 620 S.E.2d at
 
 293 n. 1 (emphasis added).
 

 In the present case, Plaintiff requested additional medical treatment for his anxiety and depression, which he alleged was the result of the 21 April 2010 accident. Plaintiff has been evaluated by several medical and psychological professionals, who expressed differing opinions both as to Plaintiff's veracity in reporting these symptoms and as to whether the psychological complaints were, in fact, causally linked to the 21 April 2010 accident. In its Opinion and Award, the Commission denied Plaintiff additional medical compensation for his anxiety and depression, stating that based on the conflicting testimony of the physicians and psychologists who evaluated him, "Plaintiff has not met his burden of showing that his alleged depression and anxiety is a result of the 21 April 2010 work-related accident."
 

 Thus, it is evident from the Opinion and Award that the Commission did not apply the rebuttable presumption under
 
 Parsons
 
 to Plaintiff's psychological symptoms and instead kept the burden on Plaintiff to demonstrate causation despite Defendant's prior admission of
 
 *498
 
 compensability in the Form 60. Based on our Court's decisions in
 
 Parsons, Perez
 
 , and
 
 Carr
 
 , we hold that doing so was a misapplication of the law. Consequently, we remand this matter to the Commission so
 
 *288
 
 that it may apply the
 
 Parsons
 
 presumption and then make a new determination as to whether Plaintiff's psychological symptoms are causally related to the 21 April 2010 injury.
 
 See
 

 Reinninger v. Prestige Fabricators, Inc.,
 

 136 N.C.App. 255
 
 , 260,
 
 523 S.E.2d 720
 
 , 723-24 (1999) (remanding "this case to the Commission for a new determination of causation" where the Commission's findings indicated that it " failed to give Plaintiff the benefit of the presumption that his medical treatment now sought was causally related to his 1995 compensable injury");
 
 see also
 

 Holley v. ACTS, Inc.,
 

 357 N.C. 228
 
 , 231,
 
 581 S.E.2d 750
 
 , 752 (2003) ("When the Commission acts under a misapprehension of the law, the award must be set aside and the case remanded for a new determination using the correct legal standard." (citation and quotation marks omitted)).
 

 We express no opinion on the question of whether the evidence of record is sufficient to rebut the presumption that Plaintiff's current complaints are directly related to his initial compensable injury. On remand, it is the role of the Commission to make this determination by evaluating the applicable evidence in order to determine whether the presumption has, in fact, been rebutted.
 
 See
 

 Miller v. Mission Hosp., Inc.,
 
 --- N.C.App. ----, ----,
 
 760 S.E.2d 31
 
 , 35 (2014) ("The employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury. If the defendant rebuts the
 
 Parsons
 
 presumption, the burden of proof shifts back to the plaintiff." (internal citations and quotation marks omitted)).
 

 II. Disability Benefits
 

 Plaintiff next argues that the Commission erred in concluding that he was no longer entitled to temporary total disability benefits. We agree.
 

 " 'Disability,' within the meaning of the North Carolina Workers' Compensation Act, is defined as incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."
 
 Demery v. Perdue Farms, Inc.,
 

 143 N.C.App. 259
 
 , 264,
 
 545 S.E.2d 485
 
 , 489 (citation and quotation marks omitted),
 
 aff'd per curiam,
 

 354 N.C. 355
 
 ,
 
 554 S.E.2d 337
 
 (2001). Thus, in order for the Commission to conclude that a plaintiff is entitled to disability benefits to compensate him for the loss in wage-earning capacity, it must find
 

 (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the
 
 *499
 
 same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.
 

 Hilliard v. Apex Cabinet Co.,
 

 305 N.C. 593
 
 , 595,
 
 290 S.E.2d 682
 
 , 683 (1982).
 

 A plaintiff seeking to demonstrate disability may prove these first two elements of disability through several methods, including
 

 (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
 

 Russell v. Lowes Prod. Distribution,
 

 108 N.C.App. 762
 
 , 765,
 
 425 S.E.2d 454
 
 , 457 (1993) (internal citations omitted);
 
 see
 

 Medlin v. Weaver Cooke Constr., LLC,
 

 367 N.C. 414
 
 , 422,
 
 760 S.E.2d 732
 
 , 737 (2014) ("[The plaintiff] may prove the first two elements [under
 
 Hilliard
 
 ] through any of the four methods articulated in
 
 Russell,
 
 but these methods are neither statutory nor exhaustive. In addition, a claimant must also satisfy the third element, as articulated in
 
 Hilliard,
 
 by proving that his inability to obtain equally well-paying work is because of his work-related injury.").
 

 *289
 
 Once an employee meets his initial burden of production under
 
 Russell,
 
 the burden shifts to the employer to rebut the evidence of disability by demonstrating "not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations."
 
 Johnson v. S. Tire Sales & Serv.,
 

 358 N.C. 701
 
 , 708,
 
 599 S.E.2d 508
 
 , 513 (2004) (citation and quotation marks omitted);
 
 see also
 

 Thompson v. Carolina Cabinet Co.,
 

 223 N.C.App. 352
 
 , 360,
 
 734 S.E.2d 125
 
 , 129 (2012). Our Supreme Court has explained that a suitable job is "one that is available to the employee and that the employee is capable of performing considering, among other things, his physical limitations" and that an employee is capable of obtaining a suitable job "when there exists a reasonable likelihood that he would be
 
 *500
 
 hired if he diligently sought the job."
 
 Johnson,
 

 358 N.C. at 708-09
 
 ,
 
 599 S.E.2d at 514
 
 (citations, quotation marks, and ellipses omitted).
 

 Here, the Commission concluded as a matter of law that Plaintiff, who was receiving total disability benefits from Defendant since the date of the 21 April 2010 accident, was no longer entitled to such benefits as of 18 January 2011, the date Defendant filed its Form 33 challenging the totality of Plaintiff's physical complaints related to his compensable injury. The Commission concluded that Plaintiff had failed to prove disability because he did not demonstrate that he had engaged in a reasonable job search and "presented insufficient evidence that a job search would be futile."
 

 It is well established that "[t]he determination of whether a disability exists is a conclusion of law that must be based upon findings of fact supported by competent evidence."
 
 Parker v. Wal-Mart Stores, Inc.,
 

 156 N.C.App. 209
 
 , 212,
 
 576 S.E.2d 112
 
 , 113 (2003). In its Opinion and Award, the Commission cited the testimony of Dr. Kurt Voos ("Dr. Voos"), an orthopedic surgeon who examined Plaintiff and-after several follow-up appointments-"authorized Plaintiff to return to work at sedentary duty with permanent restrictions including lifting up to 10 lbs with occasional walking and standing" and then made a factual finding that Plaintiff was "incapable of returning to his previous job but is capable of working in sedentary employment."
 

 However, the Commission also took note of several of Plaintiff's personal characteristics that relate to his employability. Specifically, the Commission found that Plaintiff (1) was 60 years old at the time of the hearing; (2) had been employed as a landscaper with Defendant since 2001; (3) had been employed in medium and heavy labor positions throughout his entire adult life; (4) attended school until the tenth grade; (5) was physically incapable of performing his former job as a landscaper/laborer; (6) has "difficulty reading and comprehending" written material as evidenced during his evaluation with Dr. Peter Schulz; and (7) has "an IQ of 65, putting him in the impaired range."
 

 Plaintiff asserts that this uncontroverted evidence, which the Commission found as fact, was sufficient to meet his initial burden of showing that he was incapable of earning his pre-injury wages because his preexisting personal characteristics made it futile for him to seek sedentary employment-the only type of employment within his physical restrictions. We agree.
 

 As our Supreme Court explained in
 
 Peoples v. Cone Mills Corp.,
 

 316 N.C. 426
 
 ,
 
 342 S.E.2d 798
 
 (1986),
 

 *501
 
 [i]f preexisting conditions such as the employee's age, education and work experience are such that an injury causes the employee a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the actual incapacity he or she suffers, and not for the degree of disability which would be suffered by someone younger or who possesses superior education or work experience.
 

 It follows where occupational ... disease [or injury by accident] incapacitates an employee from all but sedentary employment, and because of the employee's age, limited education or work experience no sedentary employment for which the employee is qualified exists, the employee
 
 *290
 
 is entitled to compensation for total disability.
 

 Id.
 
 at 441,
 
 342 S.E.2d at 808
 
 .
 

 We find our decision in
 
 Johnson v. City of Winston-Salem,
 

 188 N.C.App. 383
 
 ,
 
 656 S.E.2d 608
 
 ,
 
 aff'd per curiam,
 

 362 N.C. 676
 
 ,
 
 669 S.E.2d 319
 
 (2008), instructive on this issue. In
 
 Johnson,
 
 the plaintiff was a 38-year-old high school graduate who worked for the defendant as a custodian for approximately 15 years before his physician excused him from work after diagnosing him with bilateral carpal tunnel syndrome.
 

 Id.
 

 at 384-85
 
 ,
 
 656 S.E.2d at 611
 
 . In its opinion and award, the Commission concluded that the plaintiff had suffered a compensable injury and demonstrated disability under the first prong of
 
 Russell
 
 by showing he was physically incapable of work in any employment.
 
 Id.
 
 at 389,
 
 656 S.E.2d at 613
 
 . The defendant appealed to this Court, and "[w]hile we agree[d] with the Full Commission's ultimate conclusion that [p]laintiff [was] totally disabled and entitled to temporary total disability benefits," we concluded that the plaintiff had met his burden of proving disability under the
 
 third
 
 -rather than the
 
 first
 
 -prong of
 
 Russell.
 
 Id.
 

 That is, we concluded that although the plaintiff was capable of performing some work, his preexisting personal characteristics made a job search futile.
 

 While the defendant argued that the plaintiff had failed to prove that engaging in a job search would be futile, we disagreed, first noting that "the fact that [p]laintiff can perform light-duty work does not in itself preclude the Full Commission from making an award of total disability if the evidence shows that, because of preexisting limitations, [p]laintiff is not qualified to perform the kind of light-duty jobs that might be available in the marketplace" and then explaining that
 

 *502
 
 the uncontradicted evidence established that [p]laintiff has only a high school education, had been working as a custodian for [d]efendant for almost his entire adult working life, and has a litany of medical problems.... There was no evidence that [p]laintiff was offered or received any kind of vocational rehabilitation services. Given [p]laintiff's limited education, limited work experience, and limited training, in addition to his poor health, his compensable injury causes him a greater degree of incapacity than the same injury would cause some other person with superior education or work experience, or who is in better health. Thus, all the evidence tends to show that any current effort by [p]laintiff to obtain sedentary light-duty employment, the only employment Dr. DeFranzo testified that [p]laintiff is physically capable of performing, would have been futile.
 

 Id.
 
 at 391-92,
 
 656 S.E.2d at 615
 
 .
 

 The circumstances of the present case-specifically the fact that Plaintiff has an IQ in the "impaired range" coupled with limited education and training and has been employed for his entire working life in a line of work he is no longer physically capable of performing-are analogous to those in
 
 Johnson.
 
 As we clarified in that case, when determining whether disability exists, "the relevant inquiry is whether
 
 Plaintiff himself
 
 is capable of working and earning wages, not whether all or some persons with Plaintiff's degree of injury have such capacity."
 
 Id.
 
 at 391,
 
 656 S.E.2d at 614
 
 (emphasis added). Thus, the question before the Commission was whether
 
 Plaintiff
 
 -who is in his sixties and has intellectual limitations, difficulties with reading, and no other job experience outside of physical labor-would be able to obtain a position in sedentary employment.
 

 We conclude that by introducing evidence of these preexisting facts, Plaintiff offered sufficient evidence that engaging in such a job search would be futile so as to shift the burden to his employer "to show that suitable jobs are available and that [he was] capable of obtaining a suitable job taking into account both physical and vocational limitations."
 
 Thompson,
 

 223 N.C.App. at 360
 
 ,
 
 734 S.E.2d at 129
 
 (holding that plaintiff met initial burden concerning futility by producing evidence that he had only completed high school, his work experience was limited to heavy labor jobs, he still suffered substantial pain from his injury, and his work restrictions foreclosed the possibility of performing manual
 
 *503
 
 labor);
 
 see also
 

 Weatherford v. Am. Nat'l Can Co.,
 

 168 N.C.App. 377
 
 , 383,
 
 607 S.E.2d 348
 
 , 352-53 (2005) (concluding that plaintiff established futility based on evidence
 
 *291
 
 that he was 61, had worked all of his life in maintenance positions, had only a GED, and was restricted from repetitive bending, stooping or walking for more than a few minutes at a time).
 

 Thus, because Plaintiff demonstrated the futility of engaging in a job search and Defendant made no attempt to show that suitable jobs were available to Plaintiff, the Commission erred in ruling that Plaintiff was not temporarily totally disabled. The Commission's conclusions of law reaching the opposite result were not supported by the findings of fact contained within its Opinion and Award.
 
 See
 

 White v. Weyerhaeuser Co.,
 

 167 N.C.App. 658
 
 , 670,
 
 606 S.E.2d 389
 
 , 398 (2005) (explaining that conclusions concerning existence and extent of disability "must be based upon findings of fact supported by competent evidence").
 

 Defendant attempts to rely on our recent decision in
 
 Fields v. H & E Equip. Servs., LLC,
 
 --- N.C.App. ----,
 
 771 S.E.2d 791
 
 (2015), in arguing for a contrary result on this issue. In
 
 Fields,
 
 the plaintiff was employed as a mechanic for the defendant for 11 years when he sustained a back injury at work.
 

 Id.
 

 at ----,
 
 771 S.E.2d at 792
 
 . The Commission concluded the plaintiff was temporarily totally disabled because "it has been and continues to be futile for him to seek competitive employment that comports with the work restrictions [his doctor] has placed on him."
 

 Id.
 

 at ----,
 
 771 S.E.2d at 794
 
 . This Court reversed, holding that the plaintiff did not demonstrate that engaging in a job search would be futile because he "failed to provide competent evidence
 
 through expert testimony
 
 of his inability to find any other work as a result of his work-related injury...."
 

 Id.
 

 at ----,
 
 771 S.E.2d at 792
 
 (emphasis added).
 

 Specifically, we stated that the plaintiff
 

 offered no testimony from a vocational expert that his preexisting condition made it futile to seek any other employment opportunities in his job market. There was no evidence presented of any labor market statistics stating that his pre-existing condition made him incapable of re-entering the labor market. Plaintiff's medical expert did not state that it was impossible for him to work, only that he should not continue in his current role. Without any expert testimony establishing that [p]laintiff's job with [d]efendant is the only job obtainable, or any evidence demonstrating that no other man of his age, education, experience, and physical capabilities is currently working
 
 *504
 
 anywhere, [p]laintiff did not meet his burden of proof of disability under
 
 Russell
 
 prong three.
 

 Id.
 

 at ----,
 
 771 S.E.2d at 795
 
 .
 

 While we believe
 
 Fields
 
 is distinguishable from the present case on its facts-given that Plaintiff here lacks transferable skills such as computer proficiency and offered evidence from medical, psychological, and neuropsychological professionals that he is intellectually impaired with a full-scale IQ of 65, a 2.6 grade reading level, borderline nonverbal reasoning skills, and impaired verbal comprehension and processing speed-we take this opportunity to note that our prior caselaw has made clear that "a plaintiff is
 
 not required
 
 to present medical evidence or the testimony of a vocational expert on the issue of futility."
 
 Thompson,
 

 223 N.C.App. at 358
 
 ,
 
 734 S.E.2d at 129
 
 (emphasis added). Therefore, to the extent that the above-quoted language in
 
 Fields
 
 can be read to conflict with our Court's opinions in
 
 Johnson, Thompson
 
 , and
 
 Weatherford
 
 concerning futility, we are obligated to follow these earlier cases.
 
 See
 

 Respess v. Respess,
 
 ---N.C.App. ----, ----,
 
 754 S.E.2d 691
 
 , 701 (2014) ("[W]here there is a conflicting line of cases, a panel of this Court should follow the older of those two lines." (citation and quotation marks omitted)).
 

 Accordingly, we conclude that the evidence establishing Plaintiff's cognitive limitations, in combination with his age and lack of any other training, adequately demonstrates that searching for employment within his physical restrictions would be futile.
 
 See
 

 Peoples,
 

 316 N.C. at 444
 
 ,
 
 342 S.E.2d at 809
 
 ("Where ... an employee's effort to obtain employment would be futile because of age, inexperience, lack of education or other preexisting factors, the employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist.").
 

 *292
 

 Conclusion
 

 For the reasons stated above, we reverse the Commission's termination of Plaintiff's total temporary disability benefits, vacate the portion of the Opinion and Award concerning Plaintiff's request for additional treatment for anxiety and depression, and remand for further proceedings consistent with this opinion.
 

 REVERSED IN PART; VACATED AND REMANDED IN PART.
 

 Judges BRYANT and INMAN concur.